I please the Court, Counsel Kendra Matthews with Branson Blackman on behalf of Petitioner Stacey Brown. In this case, most of the critical facts and procedural history is undisputed. It's undisputed that Mr. Brown testified that he would not have pled guilty had he learned what his counsel had failed to tell him. His counsel testified that the reason he didn't share this information was that he believed his client would not plead guilty and would, in fact, pay for it. So why – tell – let's just zero in right on what – at least what's important to me. How did the State Court unreasonably apply Hill here to these circumstances? Well, I think, Your Honor, perhaps a well-placed separation of powers argument might have been worthwhile here in terms of facing the unreasonable application prong of Penroy and that case law. But I think that here the State Court, I think, is wrong. Well, it could be – the State Court tells us over and over that the State Court decision can be legally wrong. But that's still not enough. It has to be unreasonable. So I want to know why, if you look at these facts, the State Court's decision was an unreasonable application. And I want you to tell me, you know, what makes it unreasonable here? I think, first of all, the State Court did not cite the proper standard. At any point in its findings or in its letter opinion, the State Court does not cite the proper standard. The State Court says it would have been patently unreasonable for this person to go to trial. Therefore, he has not shown prejudice. That is the language the State Court uses. Then when you place that in context and you look at what the Respondent was arguing to the State Court, and Respondent was arguing to the State Court, Your Honor, this is – he cannot show that he absolutely would have gone to trial. And as the second part of that, their entire ineffective assistance of counsel argument was that it was reasonable for counsel to believe that if he shared this information, Petitioner would have decided to go to trial. Well, I mean, I guess there's no question about what he said and what his counsel said. And that would show a subjective, after-the-fact subjective view that he would have gone to trial. But Hill, I would think, in circumstances such as this, allows for the prejudice prong to be analyzed based upon what would likely have happened if Petitioner had gone to trial. And here, the evidence was just absolutely overwhelming that Brown was guilty of the child's death. His opinion that wasn't disclosed is not inconsistent with that. In fact, it was inconsistent with his own confession that he, in fact, did throw on the child and was just doing the – stuffing the cellophane in order, in effect, to create a different path. He told wildly inconsistent stories immediately after the fact. So bottom line is, under Hill, why was it unreasonable for the State Court to say, look, Brown didn't support his claim that he would have gone to trial? But if that is the case, then it, in fact, changes what Hill says. The non-dicta portion of Hill is that the defendant must, or the Petitioner, must show a reasonable probability that but for counsel's error, the result would have been different in this context. He would not have pled guilty. If the candid and the trial court found the counsel to be credible, if all of that subjective testimony is insufficient, when objectively people stepping back said, this person, from the outset of the return of the indictment, did not have an objectively reasonable basis to go to trial, then, you know, this person foregoes their right to make that decision. And we allow defendants, as advisors, as the Court, to make illogical decisions about their own fate all of the time. In fact, the case law is – has plenty of cases in which the defendant chose to plead guilty against his counsel's advice because he believed he could convince that judge not to impose the death penalty. And we say that was a voluntary plea. You must be allowed to make an illogical and incorrect decision about your own fate. That is one of the keys. And then you look to say, okay, then how can that person ever establish, when we all believe, standing back, that they would have pled – would have gone to trial? And the only way they can do it is through their own testimony and other cross-examination. The record shows that from the get-go, from the time of the indictment or the return of the information, that the defendant is desirous of pursuing – of going to trial. We absolutely have. So what's in the record here that suggests that from the time of the information or the complaint was filed that he was – you know, he wanted to go to trial? I can only refer the Court to trial counsel's testimony, but again, that was deemed credible. That was accepted as a credible recitation of the history. And the testimony was that from the get-go, he wanted to go to trial. He absolutely did not want to plead guilty to admit in any way to harming this child. That he made a mountain out of a molehill with every piece of admissible evidence they brought to him to say, excellent, this is what we need to go to trial. This is what we will focus our case on, perhaps engendering the inconsistent stories. He wanted to go to trial, and in fact, they believed unquestionably that if this offer was rejected, they would be going to trial. And so in this context, in that moment of time where they had to decide whether to present this information to him or not, they had absolutely no faith in their ability to convince him to plead guilty and accept this offer because of his from the beginning position that he did not want to plead guilty. And it is in the record. I didn't get the impression that you just conveyed. I thought he had different stories about what happened. His stories changed about the incident. That is true, Your Honor. And I also got the impression that his counsel, that even with the expert's report, still would have advised him not to go to trial, that this expert's report didn't make a difference in any way in light of all the other evidence pointing to his responsibility for the death of this child. It is unquestionably true that that would have been counsel's advice. And the reason that counsel did not share this information with him was because of his history of making a mountain out of a molehill and his strong desire not to admit to being responsible for the death of this child, even in the face of his counsel telling him, in any event, we are going to end up with a result where we were going to be deemed responsible. And so that is the record. And we would submit that it is unreasonable getting back to the actual standard because Respondent was agreeing with our assessment of Mr. Brown's position and Mr. Brown's mental state. They, Respondent, agreed. And the Court did not say a reasonable probability but for in this circumstance I assess his credibility. All the credibility findings he found in favor. He just thought somehow in the end this person would have ended up pleading guilty, and in the light of this evidence we feel that that is rebutted by the clear and convincing evidence. Otherwise, Hill becomes an objective standard. If it is unreasonable for you to plead guilty or for you to go to trial, given the I'll reserve my 30 seconds. Okay. Mr. Thompson. May it please the Court. David Thompson appearing on behalf of the State. I indicated in the brief that I filed with this Court that I thought it was a close case, but the situation with respect to how this Court reviews what the State Court did in its post-conviction proceeding leads me to believe that the District Court correctly deferred to the State Court's finding on the critical fact, and that was this, that there was no reasonable probability in light of everything that was in the record that even if Petitioner had the information about the expert that he would have done anything differently, he would have still have pled guilty. What do you do with the lawyer's statement? Well, the lawyer's statement's a weighty one, and it's a difficult one for the State. I will admit that that particular statement leads one to believe that the lawyer very specifically did not disclose the information about the expert because he was worried that his client would not accept a very favorable plea agreement. I can't get around that, and I'm not attempting to. I think that what this Court faces is a narrow issue. Was it unreasonable for the State post-conviction court to conclude, as it did, that based upon everything that was in the record, even if the Petitioner had had the expert, he still likely would have pled guilty? How do you see ñ I mean, on the one hand, what counsel said kind of concedes him into deficient performance, but that doesn't address the prejudice inquiry. And so my question really is, how do you see the prejudice inquiry playing out under Hill through the pair of glasses that we have to review the State court's decision? Well, I think, first of all, that this Court needs to determine whether or not, based upon what the State post-conviction court wrote in its decision, it was applying the correct standard. It's not absolutely clear, and I would agree with counsel, that the way that that decision is written, the post-conviction court's decision, there may be some question about what standard the State court was actually applying with respect to that prejudice prong. But I think if you read all of the decision and you look at the critical parts in context, I believe that it is a reasonable interpretation of the State court's decision that it was applying the reasonable probability standard that Hill sets out, and not the absolute proof standard that, I must say, that my colleague, I think, was incorrectly arguing to the post-conviction court. But I don't think that court adopted that standard. I think it looked at everything that was in the record and said, all right, given all of that, and I think it was appropriate to say to itself, would a reasonable person, and I will include the Petitioner within the reasonable person category, given all of that, would the Petitioner have done anything different had he had the information about the expert? And it's not unreasonable for the State court to have concluded, as it did, that he would not have. Do you think Hill is a little bit internally inconsistent? Well, internally inconsistent in what way? Well, it seems to suggest you look at the defendant, would this defendant have pled, you know, not pled guilty had he been, but for counsel's error. And then you have to overlay on that an objective standard. Right. I don't think it's internally inconsistent. I think that what courts are faced with oftentimes, of course, is to determine credibility of a Petitioner who says, hey, if I had had that information, I definitely would have gone to trial. Well, in assessing the credibility of that particular statement, which is exactly what we have here, courts must necessarily look at what a reasonable person would have done under the circumstances. That should be part of the mix, unless it's absolutely clear that the Petitioner is a totally unreasonable person, and that Petitioner would have definitely gone to trial, regardless of what was in the record. Is there any hint here in the record that he was sort of headed towards trial from the get-go? I agree with counsel that his lawyers testified in such a way that it suggested that he wanted to go to trial. He was a difficult client with respect to a guilty plea. I think that's clear, but you've got to look at how the post-conviction court got the case. It got the case with a record upon which the Petitioner decided to plead guilty. Add one little piece, and that is the expert's testimony, with all of the overlay, which is that counsel would have advised Petitioner that this expert's testimony wasn't going to make very much difference. And, in fact, it might hurt him, because it would support, quite frankly, his confession that he had drowned the child, and that it was an afterthought to put the cellophane in the child's throat. How do you understand that defense counsel would have used the expert's report? What would have allowed him to get a manslaughter conviction or something? Was that the idea? It seems to me that the Petitioner's theory was this, that the child accidentally drowned in the bathtub. The Petitioner panicked, took the child out of the bathtub, placed the child on the bed, dried him off, and then, in a panic, put the cellophane in the child's throat. That was the Petitioner's theory. Now, if counsel had to go to trial with that theory, he, of course, would have used the expert to back up the argument that, or the theory that Petitioner came upon a child who had accidentally drowned in a bathtub, that the cause of death was drowning. And that's how he would have used it. It would have required the jury, of course, to believe the Petitioner's story about an accident, as opposed to some intentional drowning, which, of course, would have been the State's theory. And that's how I think counsel would have used it. It certainly would have been a permissible use of the expert's testimony. But in light of everything else that was out there, it became dangerous testimony, quite frankly. And counsel certainly would have advised his client of that. And then the question becomes, very simply, is it unreasonable, based upon that record, to conclude as a court that Petitioner, there's no reasonable probability that Petitioner would have insisted on going to trial and not pled guilty had he had the information about the expert. That's what this court faces. And I think under case law, this Court would defer very heavily to the post-conviction court's finding in that regard. With that, unless there are further questions, I would ask that the Court affirm. Kagan. I don't think so. Thank you, Mr. Thompson. Thank you. Ms. Matthews. Two very quick points I hope to make. One, I think, in this context, that he would have insisted to go to trial is certainly one way of looking at it, but we also have to look at would he have rejected this plea offer, and would that have set him on a course for going to trial? The reason counsel didn't tell him this information is that he believed this plea offer was going to be here, and then if it rejected, they would say, fine, if this is what you want to do, we'll take you to trial, because there was no reasonable place for defense counsel to turn at trial. Thank you, counsel. Both of you. Anything else? No. It's a pretty fine argument. We appreciate it very much. And the matter just argued will be submitted. We'll next hear argument in the park. Thank you.
judges: Rymer, Nelson, Paez